Kevin Jewell, Justice
In these consolidated appeals from a probate proceeding, a beneficiary under her mother's will challenges the probate court's summary judgments in favor of the title company for two contested conveyances of the testator's properties. The title company moved for summary judgment on the ground that the beneficiary's claims were barred by the statute of limitations. On appeal, the title company reasserts this affirmative defense, but also questions the jurisdictional timeliness of these appeals and the beneficiary's standing to pursue her claims. We conclude that we have jurisdiction to consider the appeals in both regards, but we agree with the title company that the beneficiary's claims are barred by limitations. Accordingly, we affirm the trial court's judgments.
Background
Enedina Gutierrez owned two pieces of property in Galveston County-the "Church Street Property" and the "Winnie Street Property." Enedina died on April 4, 1998. Enedina had six children during her lifetime, five of whom survived her death: Olga Gutierrez (appellant), Jose Angel, *308 Maria Julia, Maria Rosalia, and Jose Esteban.[1]
Enedina's will was admitted to probate on February 12, 1999, and Jose Esteban served as executor. The will devised the Church Street Property and Winnie Street Property to Jose Angel and Jose Esteban "in equal shares." The will also included a paragraph providing:
None of the real property is to be sold or mortgaged, all property is to be kept in the Gutierrez family. When one of my children dies, that individual's property is to be divided equally among the survivors. When the last of my children is the only one remaining, then the property can be sold or do whatever that individual desires, without restrictions.
Olga refers to this paragraph as a "no-sale clause."
In 2000, Jose Angel and Jose Esteban conveyed (1) the Church Street Property to Armando Orellana and (2) the Winnie Street Property to Don and Judy Lorenz. Stewart Title Company was the title company for both transactions. Jose Angel died in 2011. In 2014, Olga, as part of a mediated settlement arising out of a prior suit against Jose Esteban, became executrix of her mother's estate.
In 2015, Olga filed a petition for declaratory judgment against Orellana, the Lorenzes, and Stewart Title, alleging the sales of the Church Street Property and Winnie Street Property were void because Jose Angel and Jose Esteban had no authority to sell the properties in 2000 under the "no-sale clause" in Enedina's will. Olga purported to sue individually and as representative of Enedina's estate. The probate court severed Olga's claims regarding the Winnie Street Property from Olga's claims regarding the Church Street Property.
As relevant here, Olga alleged in both suits that Stewart Title misrepresented to Jose Angel and Jose Esteban that they had authority to sell the properties. Stewart Title moved for summary judgment on Olga's claims in each suit, asserting a limitations defense as the sole ground for summary judgment. On August 31, 2016, the trial court signed an order granting the motions for summary judgment in both suits and dismissing Olga's claims against Stewart Title with prejudice.
Olga appealed the summary judgments to this court, but subsequently filed a document titled "Motion for Non-Suit Without Prejudice," contending that the probate court had not entered an appealable final judgment in either suit.[2] This court dismissed both appeals in December 2016.
The probate court severed Olga's claims against Stewart Title from the remaining claims among Olga, Orellana, and the Lorenzes, in the respective lawsuits. Post-severance, Olga appealed the August 31, 2016 summary judgments.
Analysis
Olga contends the trial court erred in granting both summary judgments based on Stewart Title's limitations defense. Before addressing Olga's arguments on the merits, however, we consider Stewart Title's two arguments challenging our jurisdiction. First, Stewart Title contends that Olga's notices of appeal are untimely. Second, Stewart Title argues that Olga lacks standing. Because Stewart Title's arguments implicate our jurisdiction to consider the appeals, we address them first. See, e.g. , In re R.A. , 465 S.W.3d 728, 733 (Tex. App.-Houston [14th Dist.] 2015, pet. denied)
*309 .
A. Timeliness of the Notices of Appeal
Stewart Title filed a motion to dismiss these appeals on the grounds that the notices of appeal were untimely. We denied that motion on June 1, 2017. We state the reasons for our denial herein.
The deadlines for filing a notice of appeal are jurisdictional, and, absent a timely filed notice of appeal, we must dismiss an untimely appeal. See Tex. R. App. P. 25.1(b) ; Tran v. Nguyen , No. 14-03-00766-CV, 2003 WL 22253631, at *1 (Tex. App.-Houston [14th Dist.] Oct. 2, 2003, no pet.) (mem. op.) (per curiam). Stewart Title argues that Olga's second notices of appeal are untimely. Specifically, Stewart Title contends that the summary judgments were final and appealable when first signed on August 31, 2016, not when the probate court later severed Olga's claims against Stewart Title. According to Stewart Title, Olga's first notices of appeal were timely because they were filed within thirty days of the summary judgment orders,[3] and Olga's dismissal of the original appeals deprives this court of jurisdiction over the current appeals.
Generally, with few, mostly statutory exceptions, a party may appeal only from a final judgment. Lehmann v. Har-Con Corp. , 39 S.W.3d 191, 195 (Tex. 2001). When, as here, a conventional trial on the merits has not occurred, an order or judgment is not final for purposes of appeal unless it actually disposes of all parties and all claims, or unless the order clearly and unequivocally states that it finally disposes of all parties and all claims. Id. at 205.
Olga sought declarations that the conveyances were void and that Orellana and the Lorenzes have no interest in the Church Street Property or Winnie Street property, respectively. Alternatively, Olga sought a declaration as to the rights of all parties with respect to each property. Olga asserted a claim for damages against Stewart Title for misrepresentations allegedly made prior to the conveyances. In their respective suits, Orellana and the Lorenzes each filed a combined counterclaim and third-party petition, in which they: sought to quiet title; asserted a claim of adverse possession; requested a judgment for the value of improvements to their respective properties; and asserted a claim for breach of warranty against third-party defendants.
The August 31, 2016 summary judgments at issue dismissed Olga's claims against Stewart Title with prejudice. However, the judgments did not dispose of Olga's claims against Orellana and the Lorenzes, nor of the property owners' counterclaims against Olga. The judgments also did not state with unmistakable clarity that they disposed of all parties and all claims. Accordingly, applying Lehmann , the summary judgments were not final and appealable as of August 31, 2016 but would have become so when the trial court signed severance orders on February 8, 2017. Only then would the summary judgments finally and fully dispose of all parties and all claims in those severed cases. Olga filed her second notices of appeal in both proceedings thirty days later on March 10, 2017.
Stewart Title acknowledges Lehmann 's general rule of finality, but observes correctly that the rule does not *310 apply in probate proceedings. See, e.g. , De Ayala v. Mackie , 193 S.W.3d 575, 578 (Tex. 2006) ("Probate proceedings are an exception to the 'one final judgment' rule."). In part, this exception exists in probate proceedings because controlling, intermediate issues may need appellate review to prevent an error from harming later phases of the proceeding. Id. "A probate proceeding consists of a continuing series of events, in which the probate court may make decisions at various points in the administration of the estate on which later decisions will be based." In re Estate of Adams , No. 14-12-00064-CV, 2013 WL 84925, at *2 (Tex. App.-Houston [14th Dist.] Jan. 8, 2013, no pet.) (mem. op.). De Ayala reaffirmed the court's test announced in Crowson v. Wakeham , 897 S.W.2d 779, 783 (Tex. 1995), for determining appellate jurisdiction of an "ostensibly interlocutory probate order":
If there is an express statute, such as the one for the complete heirship judgment, declaring the phase of the probate proceedings to be final and appealable, that statute controls. Otherwise, if there is a proceeding of which the order in question may logically be considered a part, but one or more pleadings also part of that proceeding raise issues or parties not disposed of, then the probate order is interlocutory.
De Ayala , 193 S.W.3d at 578 (internal quotation omitted).
The high court's adoption of the Crowson test was an effort to alleviate confusion or ambiguity in the law under the court's earlier "substantial right" test and to clarify the "complex area" of appellate jurisdiction in probate matters. See ids="8416957,8416933" index="9" url="https://cite.case.law/sw3d/193/575/">id. But even with the supplemental guidance of Crowson and De Ayala , determining when an otherwise interlocutory order in a probate proceeding disposes of all parties or issues "in a particular phase of the proceedings" often remains challenging. Partly for this reason, the court in De Ayala urged parties to seek a severance when permitted, which would tend to ensure parties' appellate rights are preserved by assuring finality under traditional rules regardless whether the Crowson test is met. See ids="8416957,8416933" index="10" url="https://cite.case.law/sw3d/193/575/">id. ; see also Crowson , 897 S.W.2d at 783 ("Litigants can and should seek a severance order either with the judgment disposing of one party or group o[f] parties, or seek severance as quickly as practicable after the judgment.").
After this court granted Olga's motion to dismiss her initial appeal, Stewart Title filed motions to sever Olga's claims against it in both trial court proceedings. After the trial court granted these motions in February 2017, Olga filed new notices of appeal. Now, Stewart Title posits that Olga's dismissal of her first appeal was fatal to her claims against Stewart Title-at least insofar as our jurisdiction is concerned-because the summary judgment orders were, in fact, appealable when they were signed and her current appeal comes too late. According to Stewart Title, the Crowson test was met when the summary judgment orders were signed on August 31, 2016 because they "disposed of a discrete issue: claims against Stewart Title for alleged misrepresentations."
Applying De Ayala and Crowson , however, we conclude that the trial court's August 31, 2016 orders were interlocutory. See De Ayala , 193 S.W.3d at 579. We reach this conclusion because, first, the present orders did not decide a controlling issue upon which future probate rulings will depend but, at most, set the stage for future resolution of remaining unadjudicated issues. See Estate of Adams , 2013 WL 84925, at *2. Whether or not Stewart Title's potential liability is barred due to limitations will not affect other aspects of the probate proceedings in a way that *311 necessitates departing from the ordinary Lehmann finality rules to obtain immediate appellate review. Thus, the summary judgment orders did not implicate a fundamental rationale underpinning the final judgment exception in probate cases-the need to prevent potential error from infecting subsequent events and rulings in the same proceeding.
Additionally, for the finality exception in probate proceedings to apply, "the order must be one that finally disposes of and is conclusive of the issue or controverted question for which that particular part of the proceeding is brought." Vickery v. Gordon , No. 14-11-00812-CV, 2012 WL 3089409, at *3 (Tex. App.-Houston [14th Dist.] July 31, 2012, no pet.) (mem. op.). While the summary judgment orders certainly brought an end to the claim against Stewart Title, they did not end the discrete phase of the proceedings of which Stewart Title is a part. Olga is challenging whether Jose Angel and Jose Esteban had authority to transfer the properties in 2000, and she contends those transfers are void. Olga asserted multiple claims against multiple parties arising out of the same challenged conveyances. Stewart Title was only one of several parties involved in the transfers, and one of several defendants, and the August 31, 2016 orders disposed of the claims only as between Olga and Stewart Title. Thus, "one or more pleadings also part of that proceeding raise issues or parties not disposed of." Crowson , 897 S.W.2d at 783 ; see also Riddick v. Marmolejo , No. 04-13-00157-CV, 2014 WL 953464, at *2 (Tex. App.-San Antonio Mar. 12, 2014, no pet.) (mem. op.) (order dismissing counterclaim was not appealable because claims arising from administration and operation of the same trusts remained pending) (citing Pollard v. Pollard , 285 S.W.3d 149, 152 (Tex. App.-Dallas 2009, no pet.) (concluding that an order refusing to vacate the dismissal of unsecured claims against the estate was not a final, appealable probate order when a counterclaim alleging conversion of estate assets remained pending) ); In re Estate of Karpenko , No. 02-11-00194-CV, 2011 WL 3546633, at *1 (Tex. App.-Fort Worth Aug. 11, 2011, no pet.) (mem. op.) (per curiam) (probate court's partial summary judgment was not appealable interlocutory order because it did not dispose of remaining claims and counterclaims, and probate court had denied motion for severance); Luviano v. Luviano , No. 14-10-00047-CV, 2010 WL 1705037, at *1 (Tex. App.-Houston [14th Dist.] Apr. 29, 2010, no pet.) (mem. op.) (per curiam) (order approving settlement agreement with one defendant was not appealable final order because the order did not dispose of all of the parties to the underlying suit); Asafi v. Rauscher , No. 14-09-00800-CV, 2009 WL 4346067, at *1-2 (Tex. App.-Houston [14th Dist.] Dec. 3, 2009, pet. denied) (mem. op.) (per curiam) (partial summary judgments did not conclude a particular phase of the probate proceeding but instead were "interrelated to the issues that remain pending before the court," and so were not immediately appealable).[4]
The present circumstances are unlike those in which courts have held an interlocutory order in a probate proceeding to be appealable. Stewart Title cites Estate of Boyle , No. 11-13-00151-CV, 2014 WL 7332761 (Tex. App.-Eastland Dec. 18, 2014, no pet.) (mem. op.). There, the trial court granted summary judgment to JPMorgan, as successor guardian to a decedent's estate, on all claims asserted by *312 Jones, a beneficiary, against JPMorgan. Id. at *1-3. The court of appeals concluded that the summary judgment was final and appealable because it disposed of all issues between the two parties. Id. at *4. Stewart Title focuses on the court's conclusion that the summary judgment "concluded the phase of the proceedings related to the 'discrete issue' of JPMorgan's liability to Jones, if any." Id. Stewart Title contends that the August 31, 2016 summary judgments likewise resolved the discrete issue of Stewart Title's liability to Olga, and thus were final and appealable when signed.
Stewart Title's reliance on Boyle is misplaced. At the time of the summary judgment in Boyle , there were only two adverse parties-JPMorgan and Jones. See id. at *2-4 (describing procedural posture of probate and related district court proceedings). While the petition for declaratory judgment filed by the estate's predecessor guardian identified other persons as interested parties, no party had any claims pending in the probate proceeding other than Jones and JPMorgan. Id. Thus, the order granting summary judgment to JPMorgan disposed of all claims and counterclaims for affirmative relief. The court could then proceed to approve the final accounting and discharge JPMorgan from further duties or liabilities in administering the estate. Id. at *4. Thus, the summary judgment order concluded a discrete phase and was final and appealable. Id. Here, in contrast, Olga asserted multiple claims against multiple parties arising out of the same challenged conveyances. The August 31, 2016 orders disposed of those claims only as between Olga and Stewart Title. Thus, the present circumstances are distinguishable from those in Boyle .
Stewart Title also cites Estate of Davidson , No. 05-15-00432-CV, 2016 WL 4254487 (Tex. App.-Dallas Aug. 11, 2016, no pet.) (mem. op.), where the court of appeals relied on a line of authority allowing appeals from orders removing an executor or estate administrator to conclude that a trial court's order removing co-executors from their position was final and appealable, because it represented the adjudication of a substantial right of those co-executors and because an order removing an estate administrator concludes a discrete phase of the probate proceeding. Id. at *2. As just discussed, the orders here did not conclude a discrete phase of the probate proceeding. Further, Estate of Davidson solely concerned removal of co-executors; the case did not concern appealability of a partial summary judgment order. Davidson is therefore distinguishable.
Other precedent from this court highlights the difference between those probate orders from which an appeal lies as compared to the present case. See Estate of Savana , 529 S.W.3d 587, 591 (Tex. App.-Houston [14th Dist.] 2017, no pet.) (order dismissing party's plea in intervention and third-party petition was appealable, because intervenor's claims were "logically separate from the independent administration of the will, which was not disposed of and to which [intervenor] was not a party"); Estate of Adams , 2013 WL 84925, at *2-3 (order declaring that a party was not an "interested party" for purposes of challenging a will was appealable); Kay v. Sandler , 718 S.W.2d 872, 873-74 (Tex. App.-Houston [14th Dist.] 1986, writ ref'd n.r.e.) (partial summary judgment admitting one will to probate while denying probate to another will was appealable).
For these reasons, we hold that the August 31, 2016 summary judgment orders became final and appealable on February 8, 2017, when the trial court signed the severance orders. Because Olga filed her second notices of appeal within thirty days of those orders, her appeals are timely, and we have appellate jurisdiction.
*313 B. Standing
Stewart Title also argues for the first time on appeal that Olga lacks standing to bring her claims, in both her individual and representative capacities. "[S]tanding, as a component of subject matter jurisdiction, cannot be waived ... and may be raised for the first time on appeal by the parties or by the court." Tex. Ass'n of Bus. v. Tex. Air Control Bd. , 852 S.W.2d 440, 445-46 (Tex. 1993). The general test for standing in Texas requires that there is a real controversy between the parties, which will be "actually determined by the judicial declaration sought." Id. at 446 (internal quotation omitted). In other words, the plaintiff's alleged injury must be "concrete, particularized, fairly traceable to the defendant's allegedly unlawful conduct, and likely to be redressed by the requested relief." AVCO Corp. v. Interstate Sw., Ltd. , 251 S.W.3d 632, 649 (Tex. App.-Houston [14th Dist.] 2007, pet. denied).
The question of whether Olga has a sufficient interest in the devised properties to confer standing requires us to construe Enedina's will in light of the allegations in Olga's petition. See Jansen v. Fitzpatrick , 14 S.W.3d 426, 431 (Tex. App.-Houston [14th Dist.] 2000, no pet.) ("[A]s a threshold matter, we must determine whether a lack of jurisdiction is apparent from the face of the plaintiffs/appellants' pleading."); Trojacek v. Estate of Kveton , No. 14-07-00911-CV, 2009 WL 909591, at *3 (Tex. App.-Houston [14th Dist.] Apr. 7, 2009, no pet.) (mem. op.) ("In the context of this case, then, we must determine whether the pleadings and evidence indicate that Trojacek has a justiciable interest in the real estate that is the subject of her issues on appeal.").
1. Standard of review and applicable law
We construe a will as a matter of law if the language at issue has a clear and unambiguous meaning. Knopf v. Gray , 545 S.W.3d 542, 545, 2018 WL 1440160, at *1 (Tex. Mar. 23, 2018) (per curiam). The cardinal rule of will construction is to ascertain the testator's intent and to enforce that intent to the extent allowed by law. See id. at 545, 2018 WL 1440160, at *2 (citing Sellers v. Powers , 426 S.W.2d 533, 536 (Tex. 1968) ; Bergin v. Bergin , 159 Tex. 83, 315 S.W.2d 943, 946 (1958) ). We look to the instrument's language, considering its provisions as a whole and attempting to harmonize them so as to give effect to the will's overall intent. Stephens v. Beard , 485 S.W.3d 914, 916 (Tex. 2016) (per curiam); Bergin , 315 S.W.2d at 946-47. We interpret the words in a will as a layperson would use them absent evidence that the testator received legal assistance in drafting the will or was otherwise familiar with technical meanings. Knopf , 545 S.W.3d at 545, 2018 WL 1440160, at *2.
When standing is reviewed for the first time on appeal, the appellate court "construes the pleadings in favor of the plaintiff and, if necessary, reviews the record for evidence supporting jurisdiction." RSL Funding, LLC v. Pippins , 499 S.W.3d 423, 429 (Tex. 2016) (per curiam); see also Rodarte v. Investeco Grp., L.L.C. , 299 S.W.3d 400, 406 (Tex. App.-Houston [14th Dist.] 2009, no pet.) ; Ford Motor Co. v. Cammack , 999 S.W.2d 1, 10 (Tex. App.-Houston [14th Dist.] 1998, pet. denied) (supp. op. on reh'g).
2. Application
Enedina devised the two properties to Jose Angel and Jose Esteban, but included a clause purporting to prohibit the subsequent sale or mortgage of the real property. Enedina also stated her intention that: "All property is to be kept in the Gutierrez family. When one of my children dies, that individual's property is to be divided equally *314 among the survivors. When the last of my children is the only one remaining, then the property can be sold or do whatever that individual desires, without restrictions."
According to Olga, Enedina's will devised to each of Jose Angel and Jose Esteban a determinable fee interest in the properties, with an executory interest going to the other siblings. Olga focuses on the second sentence of the "no-sale clause," which she excerpted in her petition: "When one of my children dies, that individual's property is to be divided equally among the survivors." Based on Olga's interpretation, Jose Angel's interest in the properties vested in Enedina's surviving children upon his death in 2011, thus giving Olga an interest in the properties.[5] Stewart Title disagrees and argues that Enedina's will gave Jose Angel and Jose Esteban unrestricted fee simple interests in the properties.[6] At bottom, the parties dispute whether Enedina intended to devise to Jose Angel and Jose Esteban a fee simple interest or some lesser interest.
A devise of real property conveys a fee simple estate-i.e., an absolute estate-unless the estate is expressly limited or unless a lesser estate is conveyed or devised by construction or operation of law. Tex. Prop. Code § 5.001(a). An estate may be limited, for example, if the devise is made subject to an executory limitation that, if and when it occurs, will automatically divest the grantee of the property. See Deviney v. NationsBank , 993 S.W.2d 443, 448 (Tex. App.-Waco 1999, pet. denied). The grantee's interest in this situation is referred to as a defeasible or determinable fee interest subject to an executory limitation. Id. The person to whom the property automatically passes on the occurrence of the executory limitation possesses an executory interest. Id. This is what Olga argues Enedina's will accomplished.
As our obligation is to construe the will as a matter of law, we must consider other potential interests created by the language in question. A will may also create a life estate. A life estate is generally defined as an "estate held only for the duration of a specified person's life." Life Estate , Black's Law Dictionary (10th ed. 2014). Thus, a will creates a life estate "where the language of the instrument manifests an intention on the part of the grantor or testator to pass to a grantee or devisee a right to possess, use, or enjoy property during the period of the grantee's life." Fin. Freedom Senior Funding Corp. v. Horrocks , 294 S.W.3d 749, 755 (Tex. App.-Houston [14th Dist.] 2009, no pet.). No particular language is required to make a life estate. Welch v. Straach , 531 S.W.2d 319, 321 (Tex. 1975). Unless otherwise authorized in the will, a life tenant must preserve the remainder interest and cannot alienate the property. Knopf , 545 S.W.3d at 546, 2018 WL 1440160, at *3 (citing Richardson v. McCloskey , 276 S.W. 680, 685 (Tex. 1925) ; Moody v. Pitts , 708 S.W.2d 930, 936 (Tex. App.-Corpus Christi 1986, no writ) ; Maxwell v. Harrell , 183 S.W.2d 577, 580 (Tex. Civ. App.-Austin 1944, writ ref'd w.o.m.) ).
So, did Enedina's will devise to Jose Angel and Jose Esteban a fee simple, a determinable fee subject to an executory limitation, or a life estate?[7] The Texas *315 Supreme Court's recent decision in Knopf guides our analysis. In Knopf , the issue presented was whether a testator intended to devise a fee-simple interest or a life-estate interest to her son. The decedent's will stated:
NOW BOBBY I leave the rest to you, everything, certificates of deposit, land, cattle and machinery, Understand the land is not to be sold but passed on down to your children, ANNETTE KNOPF, ALLISON KILWAY, AND STANLEY GRAY. TAKE CARE OF IT AND TRY TO BE HAPPY.
The Supreme Court of Texas concluded that this clause granted Bobby a life estate, with the remainder interest going to Bobby's children. Knopf , 545 S.W.3d at 546, 2018 WL 1440160, at *3.
Here, Enedina's will states:
I specially devise and bequeath the [Church Street property] ... to JOSE A. GUTIERREZ, and JOSE ESTEBAN GUTIERREZ, in equal shares....
I specially devise and bequeath the [Winnie Street property] ... to JOSE A. GUTIERREZ, and JOSE ESTEBAN GUTIERREZ, in equal shares....
None of the real property is to be sold or mortgaged, all property is to be kept in the Gutierrez family. When one of my children dies, that individual's property is to be divided equally among the survivors. When the last of my children is the only one remaining, then the property can be sold or do whatever that individual desires, without restrictions.
Read as a whole, Enedina's will granted Jose Angel and Jose Esteban each an equal interest in the properties, subject to the limitations that they not sell or mortgage the properties and that their respective interests in the properties pass to their surviving siblings upon their deaths. "This represents the essence of a life estate." Id. As was the case in Knopf , Enedina's will "indicates an intent to keep her property in her family." Id. Nowhere is that intent made clearer than the statement that "all property is to be kept in the Gutierrez family." Therefore, we conclude Enedina's will granted to Jose Angel and Jose Esteban a life estate, not a fee simple interest, in the properties. Olga thus possessed a remainder interest in the properties. See Restatement (Third) of Property § 25.2 cmt. b.[8]
*316 Stewart Title argues against any interpretation of Enedina's will that grants less than a fee simple estate. Specifically, Stewart Title contends that the directive that "[n]one of the real property is to be sold" is an invalid disabling restraint on sale;[9] that we must strike the clause without voiding the effect of the will's other provisions (i.e., the devises to Jose Angel and Jose Esteban); and that the "result is the grant of an unrestricted fee-simple estate." But the Supreme Court of Texas rejected a similar argument in Knopf as one improperly viewing will terms in isolation: to "pluck a fragment out of context, construe it in isolation, strike it, and then return to the remaining text ... inverts the analytical process and defies our rules of will construction." Knopf , 545 S.W.3d at 547, 2018 WL 1440160, at *3. Rather, the prohibition against sale is inherent in the nature of a life estate and "is an integral part of [Enedina's] expression of intent to create a life estate." Id. ; see also Benson v. Greenville Nat'l Exch. Bank , 253 S.W.2d 918, 920 (Tex. Civ. App.-Texarkana 1952, writ ref'd n.r.e.) (life estate evidenced by devise that required that stock "remain intact, can neither be sold or traded"); Robison v. Murrell , 184 S.W.2d 529, 530-31 (Tex. Civ. App.-Amarillo 1944, writ ref'd w.o.m.) (holding grant gave life estate interest when grantee was not permitted to "sell or dispose" of deeded property).
For this same reason, we reject Stewart Title's reliance on Frame v. Whitaker , 120 Tex. 53, 36 S.W.2d 149, 151-52 (1931), and intermediate court cases following Frame , which hold that a restriction that a testator's widow "shall not sell or dispose of" a farm "in any way during her life time" was void and that the will therefore conveyed a fee simple to the widow. The parties in Knopf discussed Frame in their briefing, but the court pointed out that the nature of a granted interest "must be resolved before a court may determine whether a restraint on that interest is valid." Knopf , 545 S.W.3d at 547, 2018 WL 1440160, at *3. Because we determine that Enedina's will grants a life estate and not a fee simple to Jose Angel and Jose Esteban, the prohibition against sale is inherently valid. Stewart Title's cases are distinguishable because they discuss attempts to alienate grants of fee simple. See Dodson v. Dodson , 299 S.W.2d 775 (Tex. Civ. App.-Austin 1957, no writ) ; Barrows v. Ezer , 668 S.W.2d 854 (Tex. App.-Houston [14th Dist.] 1984, writ ref'd n.r.e.) ; Kitchens v. Kitchens , 372 S.W.2d 249 (Tex. Civ. App.-Waco 1963, writ dism'd) ; Williams v. Williams , 73 S.W.3d 376 (Tex. App.-Houston [1st Dist.] 2002, no pet.).
We also disagree with Olga that her mother's will gave Jose Angel and Jose Esteban a determinable fee in the properties. For support, Olga relies on Cooley v. Williams , 31 S.W.3d 810 (Tex. App.-Houston [1st Dist.] 2000, no pet.). In Cooley , a will provided that all of the decedent's possessions would go to her husband, "and when he dies everything *317 goes to [her granddaughter]." Id. at 812. The court of appeals held that the will created a determinable fee in the decedent's husband, with an executory interest in the granddaughter. Id. at 813. But the will in Cooley does not contain key language found in Enedina's will, and the variance in language gives rise to the creation of different interests. A determinable fee is an estate in fee, and the holder of such an estate may freely dispose of the property. See id. at 813 (determinable fee "is a fee simple interest in every respect, except that it passes to another if the contingency happens"). In contrast, a life tenant must protect the remaindermen's interest and preserve the estate and is therefore prohibited from disposing of the property, unless expressly authorized by the will. See Knopf , 545 S.W.3d at 546, 2018 WL 1440160, at *3 ; Hill v. Hill , 623 S.W.2d 779, 780 (Tex. App.-Amarillo 1981, writ ref'd n.r.e.). Because the testator in Cooley neither restricted sale of the property nor expressed an intent that the property remain in the family-both of which Enedina's will does here- Cooley does not support Olga's position that the Enedina's will created a determinable fee.
Because we conclude that Enedina's will created a life estate to Jose Angel and Jose Esteban, Olga-as one of Jose Angel's surviving siblings-is a remainderman of the life estates granted to Jose Angel and Jose Esteban. Thus, Olga has standing in her individual capacity to challenge the conveyances of the properties. See, e.g. , Reilly v. Huff , 335 S.W.2d 275, 278 (Tex. Civ. App.-San Antonio 1960, no writ) (one who holds a remainder interest that is to pass after the death of the life tenant of a life estate has a vested interest, and thus has standing); Fisher v. Linthicum , No. 05-91-01228-CV, 1993 WL 96118, at *11 (Tex. App.-Dallas Mar. 31, 1993, writ denied) (not designated for publication). To the extent that Olga seeks to recover estate property in her representative capacity, she has standing in that regard as well. See Shepherd v. Ledford , 962 S.W.2d 28, 31 (Tex. 1998) ; Drew v. Jarvis , 110 Tex. 136, 216 S.W. 618, 620 (1919) (administratrix had duty to recover estate and withhold it from those not entitled to receive, and thus had standing).
C. Statute of Limitations
Concluding we have jurisdiction over these appeals, we next turn to the merits of Stewart Title's limitations defense.
1. Standard of review and applicable law
The trial court granted Stewart Title's traditional motion for summary judgment. We review a trial court's grant of summary judgment de novo. Valence Operating Co. v. Dorsett , 164 S.W.3d 656, 661 (Tex. 2005). In the traditional summary judgment context, the movant has the burden to show there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c) ; Lopez v. Ensign U.S. S. Drilling, LLC , 524 S.W.3d 836, 841 (Tex. App.-Houston [14th Dist.] 2017, no pet.). A defendant seeking summary judgment on the basis of an affirmative defense, such as limitations, bears the burden to conclusively establish that defense, including the accrual date of the cause of action. Diversicare Gen. Partner, Inc. v. Rubio , 185 S.W.3d 842, 846 (Tex. 2005) ; see also Sharp v. Kroger Tex. L.P. , 500 S.W.3d 117, 119 (Tex. App.-Houston [14th Dist.] 2016, no pet.).
In each case, Olga asserted a claim against Stewart Title, captioned "Damages From Stewart Title." In this regard, her petition stated in its entirety:
The Plaintiff seeks damages from Stewart Title as a result of the representation *318 made by Stewart Title as to the ability to convey the property as outlined above. The Estate has been damaged because of the conveyance, and such damage is the proximate cause of the action of Stewart Title in making the representation.
We construe this allegation as a claim for negligent misrepresentation because the substance of her pleading, construed liberally, expressly or impliedly includes all elements of a claim for negligent misrepresentation.[10] See Ortiz v. Collins , 203 S.W.3d 414, 421 (Tex. App.-Houston [14th Dist.] 2006, no pet.) ("[W]e look to the substance of a claim to determine its nature."). A plaintiff must bring suit for negligent misrepresentation within two years from the date the cause of action accrues. Tex. Civ. Prac. & Rem. Code § 16.003(a) ; Exxon Corp. v. Emerald Oil & Gas Co. , 348 S.W.3d 194, 202 (Tex. 2011).
2. Application
Stewart Title allegedly made the misrepresentations to Jose Angel and Jose Esteban regarding their ability to convey the properties no later than May 18, 2000 (regarding the Winnie Street Property) or August 8, 2000 (regarding the Church Street Property), which is when the brothers conveyed the respective properties. See Childs v. Haussecker , 974 S.W.2d 31, 36 (Tex. 1998) (cause of action generally accrues when a wrongful act causes a legal injury). Olga did not file the present actions against Stewart Title until March 9, 2015, well outside the limitations period.
In her response to Stewart Title's motion for summary judgment, Olga contended that she did not know of the conveyance until January 30, 2013. This contention is, in effect, an argument that the discovery rule should apply. See B. Mahler Interests, L.P. v. DMAC Constr., Inc. , 503 S.W.3d 43, 49 (Tex. App.-Houston [14th Dist.] 2016, no pet.) (discovery rule defers accrual of a claim until the injured party learned of, or in the exercise of reasonable diligence should have learned of, the wrongful act causing injury).[11] We need not decide the applicability of the discovery rule to these facts, because-even if we were to credit Olga's argument-the limitations period for Olga's negligent misrepresentation claim expired on January 30, 2015, at the latest. See Tolbert v. Otstott , No. 05-12-00024-CV, 2013 WL 3389041, at *2 (Tex. App.-Dallas July 3, 2013, no pet.) (mem. op.) ("We need not decide whether the discovery rule applies to appellant's claim.... [H]is claims are time-barred even if the discovery rule applies to those claims."). Olga filed the present claims against Stewart Title on March 9, 2015.[12]
*319 Thus, the trial court did not err by granting summary judgment in both cases on the ground that Olga's negligent misrepresentation claim is barred by the statute of limitations.
We overrule Olga's sole issue on appeal.
Conclusion
We affirm the trial court's judgments in these consolidated appeals.

A sixth child, Juan, predeceased Enedina.

The trial court's summary judgments did not resolve pending claims and counterclaims among Olga, Orellana, and the Lorenzes.

See Tex. R. App. P. 26.1 (providing that appellant must file notice of appeal within 30 days after the judgment is signed, when there were no post-judgment motions filed in the trial court).

Stewart Title has cited no statute specifically declaring the type of order at issue to be the end of a particular phase of proceedings under the Probate Code. See De Ayala , 193 S.W.3d at 578.

This proposition assumes that Jose Angel retained an interest in the properties as of 2011. He sold his interest in the properties in 2000.

As discussed below, Stewart Title contends that any limitation on the devises is void. See infra (discussing restraints on alienation).

We focus on the initial devise, because the answer to this question will inform what interest, if any, Olga received. If Jose Angel and Jose Esteban received a fee simple, Olga received no interest in the properties in 2011 because the properties were sold in 2000. See Restatement (Third) of Property: Wills & Other Donative Transfers § 24.2 cmt. b (2011) ("Because the fee simple absolute (land) and absolute ownership (personal property) are present interests that are unlimited in duration, they are never followed by a future interest."). If the brothers received a determinable fee, Olga received an executory interest. See Cooley v. Williams , 31 S.W.3d 810, 813 (Tex. App.-Houston [1st Dist.] 2000, no pet.). If the brothers received a life estate, Olga received a remainder interest. See Restatement (Third) of Property § 25.2 cmt. b.

Olga's remainder interest was either in fee or as a life estate. For example, the will may have created successive life estates in each property: first, an undivided one-half interest to Jose Angel and Jose Esteban existing for their lives; then, an undivided interest to any and all siblings then-surviving at the death of the brother first to die; and so on until only one sibling remained alive. See, e.g. , Neely v. Brogdon , 214 S.W. 614, 615-16 (Tex. App.-Austin 1919) ("A testator may create successive life estates in the same property ... provided they are persons in being at the time the will takes effect, each such estate to begin upon the termination of a preceding life estate."), aff'd , 239 S.W. 192 (Tex. Comm'n App. 1922). Continuing with that reasoning, when only the last of Enedina's children lived, that child's interest in the properties would enlarge to a fee simple according to the terms of the will providing that the individual could, at that time but not before, "[sell] or do whatever [with the properties], without restrictions." See id. at 617 ("There being no words of limitation as to the estate ... the same would be a fee simple."); see also Boone v. Stone , 142 S.W.2d 936, 941 (Tex. Civ. App.-Fort Worth 1940, writ dism'd, judgmt. correct) (upon son predeceasing daughter without issue, daughter's life estate was to be enlarged to an estate in fee, an occurrence which "is not repugnant to former provisions [in the will] creating the life estate"). However, the nature of Olga's remainder interest is not a question we need decide today. For purposes of resolving Stewart Title's standing challenge, it is enough to say that Olga had a sufficient interest in the properties to confer standing in her individual capacity.

A disabling restraint is an attempt by the grantor, through the terms of a transfer, "to invalidate a [grantee's] later transfer of that [granted] interest, in whole or in part." Restatement (Second) of Property § 3.1 (1983).

See, e.g. , Fed. Land Bank Ass'n of Tyler v. Sloane , 825 S.W.2d 439, 442 (Tex. 1991) (essential elements of negligent misrepresentation claim are: (1) the defendant made a representation in the course of the defendant's business, or in a transaction in which the defendant had a pecuniary interest; (2) the defendant supplied "false information" for the guidance of others; (3) the defendant did not exercise reasonable care or competence in obtaining or communicating the information; and (4) the plaintiff suffered pecuniary loss by justifiably relying on the representation).

Though Olga did not plead the applicability of the discovery rule, Stewart Title acknowledges on appeal that the issue was tried by consent. See, e.g. , Via Net v. TIG Ins. Co. , 211 S.W.3d 310, 312 (Tex. 2006) (per curiam).

Olga argues that she could not sue until Jose Angel's death in 2011; she does not argue that she could not sue until she became administratrix in 2014. Regardless, Olga did not effect service on Stewart Title until March 17, 2016. Accordingly, assuming without deciding that Olga could not assert the claims in her representative capacity until she became administratrix on March 3, 2014, her claims are still barred by limitations. See, e.g. , Ashley v. Hawkins , 293 S.W.3d 175, 179 (Tex. 2009) (to "bring suit" within the applicable limitations period, a plaintiff must both file suit within that period and use due diligence to serve the defendant with process"). Olga provided no evidence explaining the delay in waiting more than a year after filing suit to effect service on Stewart Title and thus cannot show that she used due diligence. See Molina v. Gears , No. 14-16-00858-CV, 2018 WL 1404340, at *4-5 (Tex. App.-Houston [14th Dist.] Mar. 20, 2018, no pet. h.) (mem. op.).